J-A23041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| LINDA & JERRY PETERSHEIM | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN P. SNYDER | : | No. 296 MDA 2023 |

Appeal from the Order Entered January 30, 2023
In the Court of Common Pleas of Perry County Civil Division at No(s):
2022-838

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: DECEMBER 18, 2023**

Appellants, Linda and Jerry Petersheim, appeal from the order entered January 30, 2023, in the Court of Common Pleas of Perry County, Civil Division, denying their motion for a preliminary injunction.[1]  We affirm.

The present action involves a dispute over Appellants' rights to use an 8 to 10-foot-wide "farm lane" that runs, in significant part, across Appellee's property at 131 Whispering Pine Lane, Loysville, and leads to a property at 230 Whispering Pine Lane, which Appellants purchased in December 2020 with

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** Pa.R.A.P. 311(a)(4) ("An appeal may be taken as of right ... from ... [a]n order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction[.]").

the intention of renovating the old log house situated there and using it is as their permanent residence.[2]  N.T. at 11, 12, 17, 70.

Abutting both 131 Whispering Pine Lane and 230 Whispering Pine Lane[3] is a second property owned by Appellants at 736 Whispering Pine Lane,[4] which serves as Appellants' current residence as well as the site of his custom butchering business and masonry business.  N.T. at 6, 43-44.  Whispering Pine Lane is a 12-foot-wide private road.  N.T. at 48.

By Appellant Jerry Petersheim's ("Appellant") own account, when he first moved to 736 Whispering Pine Lane in 1994, a gate existed at the entrance of the farm lane, at the point where it met Whispering Pine Lane.  N.T. at 52-53.  He verified that the farm lane was "basically . . . a couple of tracks for a vehicle to go up to 230 [Whispering Pine Lane] or a couple of tire tracks through the Snyder property", N.T. at 53, and he agreed there was a second gate at the other end of the farm lane, where the Snyder property ends and the 230 Whispering Pine Lane property begins.  N.T. at 53, 59-60.

At the time of Appellant's purchase of 230 Whispering Pine Lane, it was his understanding that the owner of said property had a right-of-way to use

_____

[2] Appellant testified the construction project entailed taking down some of the old, small buildings on site, stripping the house down to its bare logs, and putting in a new foundation for a barn.  To this end, he received approval from the township to begin construction on the home in March of 2022.  N.T. at 17-18.

[3] The property at 230 Whispering Lane comprises over 20 acres.  N.T. at 45.

[4] The property at 736 Whispering Pine Lane comprises over 166 acres.  N.T. at 44.

the farm lane to access the property. N.T. at 12.[5] According to Appellant, he used the farm lane for this purpose—though "not regularly"—throughout 2021 without objection by Appellee's parents, the Snyders, who were still owners of 131 Whispering Lane at the time. N.T. at 13.

Appellant testified that in March or April of 2022, about one month after he started construction at 230 Whispering Pine Lane, Appellee's father, Paul Snyder, who still owned the Snyder property at the time, told Appellant that he had no authority to drive construction vehicles on the farm lane and denied Appellant access. N.T. at 13, 53. Appellant could not recall if he replied that he "would use it no matter what", a statement attributed to him by Paul Snyder. N.T. at 55.

Nevertheless, Appellant admitted that even after he was told not to use the farm lane, he continued to have construction vehicles drive across the farm lane, which began to have the effect of "pushing out" the farm lane beyond its original 8 to 10-foot width. N.T. at 54-55. To prevent muddy tracks from forming at the newly extended sides, Appellant ordered stone to be deposited over the farm lane, which caused dirt and stone to be pushed into a spring. N.T. at 54-55. Nevertheless, Appellant defended his actions by claiming the farm lane had always been a right-of-way. N.T. at 54-55.

---

[5] On cross-examination, Appellant admitted that he knew when he purchased 230 Whispering Lane that he did not have a written easement concerning the farm lane that runs over the Snyder property. N.T. at 44.

The Snyders called the state police. N.T. at 56. A state trooper responded, and he confirmed that Appellant did not possess a written easement for the farm lane on the Snyder's property. N.T. at 56. At that point, the state trooper directed Appellant to stop using the farm lane. N.T. at 57-58.

Paul Snyder testified that he has lived 75 years at 131 Whispering Pine Lane. N.T. at 67. He stated that the people who originally lived at 230 Whispering Lane only ever walked the farm lane, as they never owned a car. They had a walking path, they opened and shut the gates, and walked through the Snyder's property with permission to do so; "Every one of them that lived there came and asked to use it. . . . and they were given permission." N.T. at 68, 75. Subsequent owners would use a car or a pickup truck, with the Snyder's permission, but nothing wider than that. N.T. at 70.

Mr. Snyder testified that when construction vehicle use started on the farm lane, he told Appellant he did not possess a right of way and must stop immediately. N.T. at 70. Mr. Snyder claimed Appellant said that he would use it whenever he wanted. N.T. at 71. When Appellant continued to use the farm lane even after the state police had told him to stop, Mr. Snyder called his attorney, who advised Mr. Snyder to barricade the entrance to the farm lane. N.T. at 71. Accordingly, the Snyders placed a manure spreader across the entry to the farm lane. N.T. at 71.

Mr. Snyder testified that he and his son did not realize that Appellant was at 230 Whispering Pine Lane at the time they blocked the farm lane.

Appellant called the state police, who ordered the Snyders to move the spreader to allow Appellant's vehicles to exit. N.T. at 71. During this time, according to Paul Snyder, Appellant was irate and told the state trooper that he had a written right-of-way in his pocket. When it was discovered that Appellant did not possess a written right-of-way, the state trooper allowed the Snyders to block access to the farm lane again once Appellant removed all his vehicles. N.T. at 72.

Because the farm lane remained obstructed, Appellant filed an emergency petition for an *ex parte* preliminary injunction, and the court issued an order on November 17, 2022, directing the removal of the manure spreader. N.T. at 36. Appellant testified, however, that two concrete boulders had been placed along the sides of the farm lane, about 10 feet apart, which, he maintained, would prevent construction vehicles, other larger vehicles such as an ambulance, and trailers from gaining access onto the farm lane. N.T. at 37-39.

Appellant indicated that his primary reason for asking the court to continue the preliminary injunction was to allow him access to continue construction to secure the footers for the barn and otherwise "winterize"[6] the construction and get it ready for the cold temperatures. N.T. at 40. If the

---

[6] Appellant explained that if the concrete footers to the barn remained exposed, frost may get underneath, push them up, and cause them to crack. N.T. at 41.

impediments remained in place, he could not complete these important tasks, he explained. N.T. at 40.

On January 30, 2023, the trial court entered an order dissolving the *ex parte* injunction and denying Appellant's Petition for Preliminary injunction.[7] This appeal followed.

Appellant raises three issues for this Court's consideration:

1. Whether the trial court abused its discretion when it denied [Appellant's] Petition for Preliminary Injunction on the ground that [Appellants] were no longer at risk of suffering further harm?

2. Whether the trial court abused its discretion when it denied [Appellants'] Petition for Preliminary Injunction on the ground that, while costly, [Appellants] could access their property from their adjoining land?

3. Whether the trial court abused its discretion when it denied [Appellants'] Petition for Preliminary Injunction on the ground that [Appellants] acknowledged that there was no written easement, and following oral communications that they had no right to utilize the farm lane, [Appellants] began using, modifying and expanding the farm lane without the permission or consent of [Appellees]?

Brief of Appellants, at 4.

When reviewing an order granting or denying a preliminary injunction, our review is "highly deferential" and limited to whether there was an abuse of discretion. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount*, *Inc.*, 828 A.2d 995, 1000 (Pa. 2003). "[W]e do not inquire into the merits of

---

[7] In its Order dissolving and denying preliminary injunctive relief, the trial court granted Appellants time to winterize the property.

the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the [trial] court." *Id.* (citation omitted). A trial court has "apparently reasonable grounds" when it has found that one of the prerequisites for a preliminary injunction has not been met. *Warehime v. Warehime*, 860 A.2d 41, 46 (Pa. 2004).

> To be entitled to a preliminary injunction, a party must show the following: First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking the injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Kuhstoss v. Steele*, 234 A.3d 789, 792–93 (Pa. Super. 2020) (citation omitted) (emphasis added). *See County of Allegheny v. Commonwealth*, 544 A.2d 1305, 1307-08 (Pa. 1988) (for preliminary injunction to issue, every prerequisite must be established; proponent of preliminary injunction faces heavy burden of persuasion).

> The purposes of a preliminary injunction are to preserve the status quo and prevent imminent and irreparable harm which might occur before the merits of the case can be heard and determined. It is considered an extraordinary remedy and may

only be granted if the plaintiff has established a clear right to the relief sought.

***Soja v. Factoryville Sportsmen's Club***, 522 A.2d 1129, 1131 (Pa. Super. 1987) (citations omitted).

Appellants contend that the trial court abused its discretion when it denied their Petition for Preliminary Injunction based on its conclusions that: (i) Appellants were afforded time to winterize their Property and are no longer at risk of suffering further harm; (ii) that accessing the Property from their own land abutting the property may prove "costly" but would not cause irreparable harm; and, (iii) that Appellants never enjoyed a status with respect to the farm lane that permitted them to run construction vehicles on it, nor did they possess either an easement by necessity or an easement by implication giving them the right to modify and expand the farm lane to allow them to do so.

To the contrary, Appellants maintain, irreparable harm automatically flows from blocking, or otherwise restricting their access to, the farm lane because they would then need to make a "costly" expenditure to create a new access lane through their abutting wooded lot. As for their use rights with respect to the farm lane, they assert that they proved a reasonable likelihood of presenting a meritorious case that their desired use was in keeping with their uncontested use of the farm lane from 2021 until June of 2022, with construction use occurring without protest for two months before Appellee's father conveyed the Snyder property to Appellee.

After careful review of the record, and guided by our highly deferential standard of review, we conclude there are "apparently reasonable grounds" for the trial court's action. As set forth above, a party seeking a preliminary injunction must show, *inter alia*, that the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. **Kuhstoss**, **supra**. The alleged wrongful conduct in this case was Appellee's barricade of the farm lane and his placement of boulders on each side of the lane to prevent larger construction vehicles from entering and using it and to restore its width to dimensions existing before Appellant's unilateral actions widened it.

Among the trial court's factual findings relating to this prerequisite was that Appellants failed to present evidence showing that they had ever enjoyed a status in which they possessed a right to run large construction trucks along the farm lane traversing Appellee's land. Indeed, at the evidentiary hearing, the court raised this point with counsel for Appellants, asking him, "But you will admit that [Appellant's] use expanded from the initial purchase of the property to the beginning of construction?" N.T., 11/22/22, at 92. The trial court incorporated this finding into its Order of January 30, 2023, in which it found, in relevant part, that "following oral communication [by the Snyders] that they had no right to utilize the farm lane, Appellants began using, modifying and expanding the farm lane without permission or consent of [Appellee]." Order, 1/30/23.

In the trial court's subsequent Pa.R.A.P. 1925 Opinion, moreover, it expounded on this finding. Specifically, the court rejected Appellants' contention that reference to the property's surroundings and the continuous use of the farm lane over generations gave rise to an implication that the parties intended Appellant's construction-related uses to continue. The court found, "There was testimony provided by both parties that the lane was used by prior owners of the properties; although it was not used on a daily occurrence, it was used mainly for foot traffic." Trial Court Opinion, 5/26/23, at 4.

Thus, "apparently reasonable grounds" exist for the trial court's ruling that, among other things, a preliminary injunction enabling Appellants to resume full-time use of construction vehicles across Appellee's farm lane would not properly restore the parties to the status as it existed immediately prior to the alleged wrongful conduct. Accordingly, as Appellants failed to make one of the six showings required to obtain a preliminary injunction, we conclude that the trial court appropriately denied Appellant's application for a preliminary injunction.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/18/2023